UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ZUFFA, LLC, d/b/a THE ULTIMATE FIGHTING CHAMPIONSHIP (UFC) | CIVIL ACTION NO. 11-0006 |
| VERSUS | JUDGE ROBERT G. JAMES |
| WILLIAM JOSEPH TRAPPEY, III, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Plaintiff Zuffa, LLC d/b/a the Ultimate Fighting Championship ("Zuffa") brought this action against Defendants William Joseph Trappey, III ("Trappey") and Bart James Babineaux ("Babineaux") individually, and as officers, directors, shareholders and/or principals of Monago Investments, LLC, d/b/a Monagos Field House a/k/a Fieldhouse Bar & Grill; and against Monago Investments, LLC, d/b/a Monagos Field House a/k/a Fieldhouse Bar & Grill ("Monago"). Plaintiff alleges that Defendants are liable under the Federal Communications Act ("FCA") for the unauthorized receipt and exhibition of a pay-per-view program; and under the United States Copyright Act for copyright infringement. Pending before the Court is Plaintiff's Motion for Summary Judgment [Doc. No. 23] on its FCA claim. For the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

I.   FACTS AND PROCEDURAL HISTORY

Zuffa is the registered copyright holder of the June 12, 2010 pay-per-view program entitled UFC # 115[1] (the "Broadcast").  [Doc. No. 25, Ex. A].  Commercial establishments had to pay Zuffa a licensing fee to air the Broadcast.

---

[1] UFC stands for Ultimate Fighting Championship.

Trappey and Babineaux are principals of Monago and operate the Fieldhouse. Trappey purchased the Broadcast at his home through a residential cable box from Comcast, the local cable provider. Trappey then brought the residential cable box to the Fieldhouse and used it to replace the commercial cable box there. [Affid. of Trappey, Doc. No. 30-1; Affid. of Babineaux, Doc. No. 30-2]. Consequently, on June 12, 2010, the Fieldhouse aired the Broadcast after it was purchased under a residential account. [*Id*.; Defs.' Stmt. of Mat. Facts, Doc. No. 30-3, ¶¶ 10, 17-18].[2]

Zuffa had hired auditors to visit establishments that had not paid commercial licensing fees for the Broadcast to determine if it was being unlawfully aired. [Affid. of Epstein, Doc. No. 25, ¶¶ 5-6]. On June 12, 2010, one of the auditors visited the Fieldhouse where he observed the Broadcast playing before an audience of approximately fifty-five to sixty-two patrons. [Doc. No. 25, Ex. C]. The auditor recorded a video showing the Broadcast playing on a large projection screen and posters advertising the Broadcast posted on the wall. [*Id*., Ex. D]. Neither Trappey, Babineaux, nor the Fieldhouse had authorization from Zuffa to air the Broadcast. [*Id*., ¶¶ 3, 6, 7].

On January 4, 2011, Zuffa filed a Complaint against Defendants Trappey, Babineaux and Monago (collectively, "Defendants") alleging violations of the FCA under 47 U.S.C. § 605 (Count I) and 47 U.S.C. § 553 (Count II), as well as copyright infringement under 17 U.S.C. § 501 (Count III). [Doc. No. 1]. In its Complaint, Zuffa seeks statutory penalties, attorney's fees, interest, and costs. Defendants filed their Answer on May 23, 2011. [Doc. No. 9].

---

[2]In its Motion for Summary Judgment, Zuffa points out that the local cable provider, Comcast, was only able to distribute the Broadcast to residential customers because Zuffa and its promoter had the exclusive rights to distribute the Broadcast to commercial establishments. [Doc. No. 23-2, p. 11].

On January 6, 2012, Zuffa moved for summary judgment on the grounds that Defendants Trappey and Babineaux are personally liable under 47 U.S.C. § 553 for the Fieldhouse's unauthorized exhibition of the Broadcast. On January 24, 2012, Defendants filed an Opposition. [Doc. No. 30]. Zuffa filed a Reply [Doc. No. 31] on February 7, 2012.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment "shall [be] grant[ed] ... if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir.1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

B.     **Defendants' Challenges to Zuffa's Pleadings**

In their Opposition, Defendants challenge Zuffa's pleadings by questioning Zuffa's rights to the Broadcast and pointing out defects in two affidavits accompanying its Motion for Summary Judgment. [Doc. No. 30, pp. 3-4].

First, Defendants challenge Zuffa's right to bring an action under 47 U.S.C. § 553 of the FCA because Zuffa did not copyright the Broadcast until two months after it aired. Defendants admit that Zuffa is a copyright holder of the Broadcast, but contend that Zuffa is not an aggrieved person under the FCA because the Broadcast aired before Zuffa registered its copyright with the United States Copyright Office.

The FCA prohibits a person from intercepting or receiving a communications service unless authorized by the cable provider. 47 U.S.C. § 553(a)(1). "**Any person aggrieved** by any violation of subsection (a)(1) may bring a civil action in a United States district court . . . ." 47 U.S.C. § 553(c)(1) (emphasis added). The FCA does not define "any person aggrieved."

The copyright owner has the exclusive rights to distribute copies of the copyrighted work. 17 U.S.C. § 106(3). The Copyright Act provides that copyright registration is permissive and not a precondition for copyright protection. 17 U.S.C. § 408(a). Copyright registration is a prerequisite for a party to institute a civil action for infringement. 17 U.S.C. § 411. If a certificate of registration is made before or within five years after the first publication of the work, such certificate "shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). Accordingly, the Court finds that Zuffa is a "person aggrieved" within the meaning of the FCA because Zuffa was a copyright holder and its registration of that copyright comports with the requirements of the Copyright Act.

Second, Defendants attack the unsworn affidavit of Zuffa's attorney, Julie Cohen Lonstein ("Lonstein") [Doc. No. 24], pointing out that, because it is unsworn, the affidavit and its accompanying exhibits are defective summary judgment evidence. An unsworn affidavit is incompetent to raise a fact issue at summary judgment. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). "A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'"[3] *Id*. Lonstein's unsworn affidavit does not conform to the statutory exception. Thus, the affidavit, as it stands, would allow Lonstein "to circumvent the penalties for perjury in signing onto intentional falsehoods." *Id*. Consequently, the Court finds that Lonstein's affidavit and its attached exhibits are incompetent summary judgment evidence, and the Court will not consider them.

Finally, Defendants challenge the affidavit of Joe Hand, Jr. ("Hand"), president of the promotion company for Zuffa's programs. Defendants claim that Hand's affidavit is also defective because the document states that it was executed in Pennsylvania, yet the notary seal states that the notary (Lonstein) is a Notary Public in New York. [Doc. No. 27]. An affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." BLACK'S LAW DICTIONARY 66 (9th ed. 2009). Zuffa's Reply fails to address the notarial defect pointed out by Defendants. [Doc. No. 31]. Thus, the Court finds that Hand's affidavit and its attached exhibits are also incompetent summary judgment

---

[3]The full text of the statutory exception's declaration is, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)" 28 U.S.C. § 1746.

evidence because it is unclear whether Lonstein was authorized to administer an oath to Hand in Pennsylvania. Therefore, the Court will not consider this evidence either.

### C. Liability under the FCA

Zuffa brought suit under §§ 553(c) and 605(e)(3) of the FCA. Each section provides a private right of action to aggrieved parties whose proprietary broadcasts are intercepted by unauthorized parties.

#### 1. Zuffa's Pursuit of Dual Causes of Action Under 47 U.S.C. §§ 553 and 605

Apparently recognizing that courts do not allow recovery under both §§ 553 and 605, Zuffa moves for summary judgment under § 553 alone, which pertains to cable broadcasts.[4] [Doc. No. 23]. *See J & J Sports Prods. v. Tellez*, 11-cv-2823, 2011 U.S. Dist. LEXIS 146464, at *2 n.1 (E.D.N.Y. Dec. 20, 2011) ("Where a litigant seeks damages under both of these sections for a single incident . . . he or she may only recover under one.") (citing *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993)); *Setanta Sports N. Am. Ltd. v. Giannakopoulos*, No. H-07-2318, 2008 U.S. Dist. LEXIS 50716, at *3 (S.D. Tex. June 25, 2008) (recognizing that recovery under both §§ 553 and 605 is not permitted). Because Zuffa does not move for summary judgment under § 605, which pertains to satellite broadcasts,[5] the Court gives Zuffa

---

[4]"No person shall intercept or receive or assist in intercepting or receiving any communications service offered **over a cable system**, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law . . . ." 47 U.S.C. § 553(a)(1) (emphasis added).

[5]"No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication **by radio** and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a) (emphasis added).

notice of its intent to *sua sponte* dismiss its claim under 47 U.S.C. § 605. If Zuffa opposes the Court's dismissal of this claim it shall file a memorandum in opposition by March 30, 2012.

### 2. Defendants' Liability Under § 553

Zuffa asserts that Defendants are liable as a matter of law under § 553. [Doc. No. 23-2, pp. 9-11]. In order to establish liability for a violation of § 553, Zuffa must show that, "(a) the event was shown in Defendants' Establishment and (b) that such exhibition . . . was not authorized." *J&J Sports Prods., Inc. v. Q Café*, 3:10-cv-02006-L, 2012 U.S. Dist. LEXIS 8700, at *8–9 (N.D. Tex. Jan. 25, 2012) (citing *King Vision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)).

The affidavit of Zuffa's auditor, James Gill ("Gill"), establishes that the Broadcast aired at the Fieldhouse on June 12, 2010. Gill's video supports his affidavit. [Doc. No. 25, Ex. C, D]. The affidavit of Ike Epstein ("Epstein"), Zuffa's executive vice president and general counsel, further establishes that the Broadcast was legally available to commercial establishments only through an agreement with Zuffa or its promoter and that Defendants did not enter into such an agreement with either party. [Doc. No. 25, ¶¶ 3-9]. Zuffa's records listing the commercial licenses issued for the Broadcast show that no license was issued to Defendants. [*Id.*, Ex. B].

Defendants, through their Statements of Material Facts and affidavits, admit that the Broadcast aired at the Fieldhouse and that it was purchased through a residential account, rather than a commercial account. [Doc. Nos. 30-1; 30-2; 30-3]. In their Opposition, Defendants focus on the absence of intent in the actions of Trappey and Babineaux. [Doc. No. 30, pp. 4-5]. However, a party's intent is relevant to determining damages under § 553, not liability. *See Int'l Cablevision*, 997 F.2d at 1004 (holding that 47 U.S.C. § 553 does not provide a good faith defense

against liability). The Court finds that Defendants are liable under 47 U.S.C. § 553 because they aired the Broadcast at the Fieldhouse on June 12, 2010, without authorization. Accordingly, Zuffa's Motion for Summary Judgment is GRANTED on this claim.

### 3. Vicarious Liability of Trappey and Babineaux

Next, Zuffa seeks a finding that Trappey and Babineaux are vicariously liable for the Fieldhouse's exhibition of the Broadcast. In order to establish vicarious liability, Zuffa must show that Trappey and Babineaux "(a) had a right and ability to supervise the infringing activities, and (b) an obvious and direct financial interest in the exploitation." *Q Café*, 2012 U.S. Dist. LEXIS 8700, at *11 (citing *Softel, Inc. v. Dragon Med. & Sci. Commc'ns*, 118 F.3d 955, 971 (2d Cir. 1997)) (citations omitted).[6]

Trappey and Babineaux admit that they had close control over the internal operating procedures of the Fieldhouse and that, on June 12, 2010, they had some supervisory capacity over the events occurring at the Fieldhouse. [Defs.' Ans. to Compl., Doc. No. 9, ¶¶ I, K]. They also admit that they are "officers, directors, shareholders, and/or principals of [t]he Fieldhouse" and that they held a financial interest in the Fieldhouse on June 12, 2010. [*Id*. at ¶ H; Doc. No. 23-1, ¶ 14; Doc. No. 30-3, ¶ 14]. They deny, however, that they enjoyed a financial benefit from the showing of the Broadcast, arguing instead that any financial benefit that accrued was for the

---

[6]Zuffa directs the Court to case law applying the Copyright Act's standard for vicarious liability to the § 553 violations here. [Doc. No. 23-2, p. 12]. Although the FCA and the Copyright Act are distinct, the Fifth Circuit has found them analogous. *See Prostar v. Massachi*, 239 F.3d 669, 677 (5th Cir. 2001) ("We conclude that the Copyright Act provides the appropriate federal-law analogue to [plaintiff's] FCA claims . . . . The Copyright Act and the FCA both protect proprietary rights in the context of cable transmissions."). Thus, the Court will apply the Copyright Act's standard for vicarious liability for the purpose of determining vicarious liability for a violation of § 553.

Fieldhouse alone. [Doc. No. 9, ¶ J].

By admitting that they are "officers, directors, shareholders, and/or principals" of the Fieldhouse, Trappey and Babineaux concede the requisite control and financial interest necessary to establish their vicarious liability for the Fieldhouse's showing of the Broadcast. *See Setanta Sports*, 2008 U.S. Dist. LEXIS 50716, at *9 (citing *J&J Sports Prods., Inc. v. Benson*, No 06-1119, 2007 U.S. Dist. LEXIS 21779, at *7 (S.D.N.Y. Mar. 27, 2007) (finding undisputed allegation that individual defendants were sole proprietor and officer, director, shareholder, and/or principal of defendant establishments sufficient to establish requisite control and financial interest)); *cf. Burdick v. Koerner*, 988 F. Supp. 1206, 1210 (E.D. Wis. Jan. 5, 1998) (corporate infringement does not result in liability to member of the board of directors if member's duties were merely administrative and there is no evidence that she exercised significant control over operations or participated in decisions leading to infringement). The Court finds that Defendants Trappey and Babineaux are vicariously liable under 47 U.S.C. § 553 for the Fieldhouse's showing of the Broadcast. Accordingly, Zuffa's Motion for Summary Judgment is GRANTED on this claim.

**D.     Willfulness**

Zuffa contends that the acts of displaying advertisements for the Broadcast and airing the Broadcast on a residential cable box at the Fieldhouse are sufficient evidence for the court to find that Trappey and Babineaux willfully violated § 553. [Doc. No. 23-2, pp. 11-12]. Defendants maintain that Zuffa does not provide sufficient evidence to show that Trappey and Babineaux were aware of separate pay-per-view rates for commercial and residential consumers. Defendants also maintain that Trappey substituted the residential cable box for the Fieldhouse's commercial

cable box because he believed that the Fieldhouse's cable box was faulty. [Doc. No. 30, pp. 4-5; Doc. No. 30-1, pp. 2-3].

Under § 553, an aggrieved person may recover statutory damages in the range of $250 to $10,000. 47 U.S.C. § 553(c)(3)(A)(ii). If Defendants willfully violated § 553 for commercial gain, the Court has discretion to increase damages by $50,000, or to decrease damages to as little as $100 if Defendants' violation was unwitting. 47 U.S.C. §§ 553(c)(3)(B)-(C).

"According to the Supreme Court, willfulness is defined as 'disregard for the governing statute and an indifference for its requirements.'" *J&J Sports Prods. v. Garcia*, No. H-08-1675 2009 WL 2567891, *4 (S.D. Tex. Aug. 14, 2009) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27 (1985)) (internal citations omitted). To determine willfulness for commercial gain, some courts have looked for evidence of a cover charge, increased prices for food and drinks, an increased number of patrons attending the establishment, and advertisements. *See J&J Sports Productions, Inc. v. Canedo*, No. C 09-01488 PJH, 2009 WL 4572740, *10 (N.D. Cal. Dec. 1, 2009) (citations omitted).

Here, Zuffa's auditor, Gill, avers that the Fieldhouse did not collect a cover charge. [Doc. No. 25, pp. 17-19]. Zuffa's pleadings do not address increased prices for food and drinks nor whether the number of patrons that Gill observed deviated from regular attendance figures. Trappey, in his affidavit, acknowledges that posters advertising the Broadcast were present inside the Fieldhouse, but avers that "they were put up by a beer distributor to promote their alcohol products and were neither requested nor used by [t]he Fieldhouse to promote the [Broadcast]." [Doc. No. 30-1, p. 3]. Zuffa does not address Trappey's explanation for the presence of the advertisements in its Reply to Defendants' Opposition to Plaintiff's Motion for Summary

Judgment. [Doc. No. 31]. The Court does not find the advertisements alone to be sufficient summary judgment evidence to determine whether Trappey's and Babineaux's actions constituted willful violations of § 553.

Therefore, the Court finds that there is a genuine issue of material fact as to whether Defendants' violation of § 553 was willful and for commercial gain. Although it may be possible to construe willfulness from the pleadings, the pleadings do not indicate that Zuffa has taken depositions or made an effort to develop the factual issues of the case. Because Defendants have challenged the allegation that their conduct was willful and Zuffa has not taken steps to reach Defendants' state of mind, there is a genuine fact issue as to intent. *See Garden City Boxing Club, Inc. v. Stone*, 285 F. Supp. 2d 447, 453 (D. Del. 2003) (finding that, where no depositions had been taken, the plaintiff's motion for summary judgment seeking relief for willful violations of §§ 553 and 605 was prematurely filed because it was "based on mere allegations of intentional conduct, absent any evidence of defendants' state of mind."). Accordingly, Zuffa's Motion for Summary Judgment is DENIED as to its claim that Trappey's and Babineaux's violation of 47 U.S.C. § 553 was willful and for commercial gain. This claim is reserved for trial.

### E.   Statutory Damages

Finally, in its Motion for Summary Judgment, Zuffa requests permission to submit authorities to the Court to suggest an appropriate amount for statutory damages for a violation of 47 U.S.C. § 553. Zuffa's request to submit the brief, limited to a non-willful violation of 47 U.S.C. § 553, is GRANTED.

### F.   Zuffa's Copyright Claim

In Count III of the Complaint [Doc. No. 1, ¶¶ 32–41], Zuffa alleges that Defendants

violated the Copyright Act, 17 U.S.C. § 501, and requests statutory damages pursuant to 17 U.S.C. §§ 504-505. Because Zuffa's Motion for Summary Judgment does not address the alleged Copyright Act violation, the Court ORDERS Zuffa to inform the Court, in writing, of its intent to either pursue the copyright claim or to move for its dismissal.

### III. CONCLUSION

For the foregoing reasons, Zuffa's Motion for Summary Judgment [Doc. No. 23] is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to Zuffa's claims that Defendants are liable for a violation of 47 U.S.C. § 553 and that Defendants Trappey and Babineaux are vicariously liable for the same. The Motion is DENIED as to Zuffa's claim that Trappey's and Babineaux's violation of 47 U.S.C. § 553 was willful and for commercial gain. This claim is reserved for trial.

Additionally, by March 30, 2012, the Court ORDERS Zuffa to submit a brief to the Court addressing (1) damages for a non-willful violation of 47 U.S.C. § 553; and (2) its intent to pursue or seek dismissal of the copyright claim alleged in Count III of its Complaint.

Finally, the Court gives Zuffa notice of its intent to *sua sponte* dismiss Zuffa's claim against Defendants under 47 U.S.C. § 605. If Zuffa opposes the Court's intended dismissal of this claim, it shall file a memorandum in opposition by March 30, 2012.

MONROE, LOUISIANA, this 22nd day of March, 2012.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE